IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In Re:

CV Settlement Holdings, LLC,                    Case No. 14-3731-JCO

    Debtor.

_____

CV Settlement Holdings, LLC, *et al.,*

    Plaintiffs,

v.                                                   Adversary Case No. 15-29-JCO

Portside Realty, LLC,

    Defendant.

MEMORANDUM OPINION AND ORDER
ON MOTION FOR SUMMARY JUDGMENT

On June 1, 2017, CV Settlement Holdings, LLC, filed its Motion for Summary Judgment (Doc. 98), to which Defendant Portside Realty, LLC (hereinafter referred to as "Portside") did not file a response. According to this Court's Order, (Doc. 99), this matter came under submission on June 29, 2017. The matter is now ripe for adjudication and the Court enters its ruling herein.

FACTUAL AND PROCEDURAL HISTORY

In 2008, UCO Construction, LLC, J. Marion Uter, Paul M. Uter and others ("the Uter entities") sued a number of defendants in Baldwin County Circuit Court (hereinafter the "Baldwin County litigation"). A jury awarded the Uter entities $5,252,000 on December 16, 2011. The Uter entities sought substantial attorney fees in

post-verdict motions. The parties began settlement discussions to avoid the expense of the litigation continuing through the appellate process. They settled the case for a confidential amount to be paid partly in cash and partly by the transfer of lots in Cypress Village Subdivision to an entity to be owned by Marion Uter and Paul Uter. (Doc. 98-2 at 87). That entity was CV Settlement Holdings, LLC (hereinafter referred to as "CVSH"), which was formed on or about June 7, 2013, under the Alabama Limited Liability Company Law.

The initial capitalization of the company was accomplished on August 9, 2013 by the transfer to it of certain real estate in Baldwin County by Warranty Deed from UCO Construction, LLC, J. Marion Uter, Paul M. Uter and Colin D. Uter pursuant to the terms of the settlement agreement disposing of the Baldwin County litigation. (Doc. 98-2 at 3).

The company operations are controlled by an Operating Agreement dated August 23, 2013. (Doc. 98-2 at 1-17). The members of the company are J. Marion Uter and Paul M. Uter, each owning fifty (50%) percent of the membership interest. (Doc. 98-2 at 6, 87). CVSH has two managers, James H. McDonald and Peter F. Burns. (Doc. 98-2 at 4). CVSH's Operating Agreement indicates that neither member could bind CVSH. Only its managers, Pete Burns and/or Jay McDonald, could bind the LLC. (Doc. 98-2 at 1-17).

The law firms of Alford, Clausen & McDonald, LLC and Burns, Cunningham & Mackey, P.C. represented the Uter entities in the Baldwin County litigation. As part of the settlement, an agreement was reached as to the amount of attorney fees and how the attorney fee portion of the property would be divided between the two law firms.

The Alford firm owed money to Bryant Bank. The firm intended to use a portion of its share of the attorney fees to pay the bank. However, the expense of completing the settlement did not leave enough money to pay the bank. Bryant Bank threatened suit against CVSH, and CVSH settled the dispute by giving the bank a note and a mortgage on the remaining lots. This mortgage was recorded on October 9, 2013, and amended by an Amendment to Real Estate Mortgage recorded December 20, 2013. The mortgagees are Bryant Bank and Burns, Cunningham & Mackey, P.C. In effect, Bryant Bank stepped into the shoes of Alford, Clausen & McDonald, LLC.

In 2014, CVSH had a contract to sell ten lots to Truland Homes. It intended to use the sale proceeds to make payments on the Bryant Bank/BC&M mortgage. However, the title examiner determined a "Compensation Agreement" recorded by Portside on October 24, 2014, (Doc. 98-2 at 18), was a possible cloud on CVSH's title, preventing CVSH from the closing the sale. Because the sale did not close, the creditors began foreclosure. CVSH filed the underlying Chapter 11 case on November 13, 2014.

The Compensation Agreement, (Doc. 98-2 at 18), dated September 13, 2013, and not recorded until October 24, 2014, does not mention CVSH or property owned by CVSH. Rather, it references Cypress Village Development Company, the owner of approximately six lots at Cypress Village.

In 2006 and 2007, Ross Easter worked for the Cypress Development project in marketing as a salaried employee. Since August of 2013, Portside has worked for CVSH as its real estate agent. Portside was compensated for all sales in which it participated, with real estate commissions being paid at closing. Those commissions totaled $50,420.00 (*See* HUD-1's showing Portside as real estate agent. (Doc. 98-2 at

3

36-63).

CVSH filed its adversary proceeding complaint against Portside on February 19, 2015, (Doc. 1), and amended the complaint on March 10, 2015, (Doc. 5).

Portside filed an Answer and Counterclaim on April 20, 2015. (Doc. 10). Portside denied a number of the material allegations in the Amended Complaint and set out its Affirmative Defenses. Portside also filed counterclaims against CVSH, added additional parties and filed third-party complaints against those parties. The parties added as third-party defendants are Canal Road Homes, LLC, Cypress Village Development Company, LLC, Paul M. Uter, J. Marion Uter, and Paul Uter Homes, LLC. CVSH filed an Answer to Portside's counterclaims denying the material allegations and setting out its affirmative defenses. (Doc. 37). Canal Road Homes filed its Answer to the Counterclaim,[1] as did Marion Uter, Paul Uter, Cypress Village Development Company, LLC., and Paul Uter Homes, LLC. (Docs. 36, 58, respectively).

The Court notes that though all parties have filed an answer to the Counterclaim, CVSH is the only party that has requested an entry of summary judgment on any claim raised in this action. Therefore, this Opinion is dispositive as to CVSH only, as the Court has not heard from the other parties involved and their legal arguments are not properly before this Court at this time.

## CONCLUSIONS OF LAW

### Summary Judgment Standard

---

[1] Canal Road Homes, LLC is a Chapter 11 Debtor-In-Possession before this Court in case number 15-712-JCO. Portside named Canal Road Homes as a defendant in this proceeding; however, on September 2, 2016, Canal Road Homes and the claims against it were dismissed with prejudice from this proceeding.

Motions for summary judgment are governed by FED. R. CIV. P. 56(a), as incorporated by FED. R. BANKR. P. 7056. Rule 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A material fact is one "that might affect the outcome of the suit under governing law. . . ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Conclusory allegations by either party, without specific supporting facts, have no probative value. *Evers v. Gen. Motors Corp.,* 770 F.2d 984, 986 (11th Cir. 1985).

The party seeking summary judgment is responsible for submitting evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "The [bankruptcy] court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in [its] favor." *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993).

<u>Amended Complaint: CVSH Is Not A Party to the<br>Purported Compensation Agreement</u>

The Compensation Agreement, is, on its face, between Portside Realty, LLC, its affiliates and/or successors and assigns and Cypress Village Development Co., LLC( "Cypress Village Development "), its affiliates and/or successors and assigns.

CVSH is not a successor to or an assign of Cypress Village Development. None of the property owned by CVSH was acquired from Cypress Village Development. (Doc. 98-2 at 25).

CVSH is not an affiliate of Cypress Village Development as that term is defined by § 101(2)[2] of the Bankruptcy Code. Even though Marion Uter owns 100% of Cypress Village Development and 50% of CVSH, Cypress Village Development has no ownership interest in CVSH and no authority to control the operations of CVSH or to vote as a member of CVSH. The control and operation of CVSH is in the LLC managers, Peter Burns and James McDonald. (Doc. 98-2 at 4).

CVSH acquired title to its real estate by a deed dated August 6, 2013 and recorded on August 9, 2013. (Doc. 98-2 at 20-36). The Compensation Agreement was purportedly entered into between Portside and J. Marion Uter on September 3, 2013.

---

[2] Section 101(2) defines the term "affiliate" to mean:
**(A)** entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities--
**(i)** in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
**(ii)** solely to secure a debt, if such entity has not in fact exercised such power to vote;
**(B)** corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities--
**(i)** in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
**(ii)** solely to secure a debt, if such entity has not in fact exercised such power to vote;
**(C)** person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor; or
**(D)** entity that operates the business or substantially all of the property of the debtor under a lease or operating agreement.

The contracting parties were Portside Realty, LLC and Cypress Village Development Co., LLC.

Therefore, this Court finds that CVSH is not a party to the purported Compensation Agreement, and is therefore not bound by its terms. Likewise, because CVSH is not a party to the agreement, the real estate owned by CVSH is not affected by the agreement.

<u>Amended Complaint: The Alabama Statute of Frauds</u>

Section 35-4-20 of the Alabama Code states:

> Conveyances for the alienation of lands must be written or printed, or partly written and partly printed, on parchment or paper, and must be signed at their foot by the contracting party or his agent having a written authority; or, if he is not able to sign his name, then his name must be written for him, with the words "his mark" written against the same, or over it; **the execution of such conveyance must be attested by one witness** or, where the party cannot write, by two witnesses who are able to write and who must write their names as witnesses; or, if he can write his name but does not do so and his name is written for him by another, then the execution must be attested by two witnesses who can and do write their names.
> (Emphasis added).

To effectuate a transfer of title to real property, statutory law requires that a deed be in writing, that the grantor sign the deed, and that it be attested to by at least one witness; if a conveyance is attempted and these requirements are not met, then the conveyance is void. *Smith v. Smith*, 892 So.2d 384, 388 (Ala. Civ. App. 2003) (an attempted conveyance of lands in a manner other than as required by the statute is void).

Since Marion Uter's purported signature on the Compensation Agreement was not witnessed or acknowledged, the Compensation Agreement does not comply with the statute of frauds and is thus ineffective to transfer and/or cloud title to property.

Avoidance of the Compensation Agreement
under 11 U.S.C. §§ 544 and 547

This Court has held that the Compensation Agreement is not a contract binding CVSH; consequently Plaintiff's count seeking the avoidance of the "Compensation Agreement" pursuant to 11 U.S.C. § 544 and § 547 is moot.

Portside's Counterclaims

Count One: Breach of Contract

Portside contends that CVSH committed multiple material breaches of contract by failing to pay $473,500.00 or more to Portside; failing to inform Portside of who owned the property that was being sold; failing to honor the terms and conditions of the contract between the parties concerning the Truland Homes offer; and attempting to pay Portside less than what was contractually agreed upon. (Doc. 10 at 23).

It is a basic concept that for a breach of contract to occur, there must be a contract in place that can be breached. As this Court found above, the Compensation Agreement does not contractually bind CVSH or its property, and the agreement as it relates to CVSH is void and of no effect. Therefore, where there is no contract, there can be no breach, and such is the case here.

To the extent that Portside alleges that Marion Uter bound CVSH by signing the Compensation Agreement with apparent authority to do so, this Court disagrees for the following reasons.

Marion Uter owned a 50% membership in the LLC. He was a member only. He was not a manager. The Operating Agreement (Doc. 98-2 at 1) states at Article 4.1:

> 4.1. <u>Management.</u> The management of the Company, and all of the authority of the Company, shall be under the direction of, and

shall be exercised by, two (2) Managers, one of whom shall be appointed by McDonald LaGarde, LLC and one of who shall be appointed by Burns, Cunningham and Mackey, P.C. The persons who shall serve as Managers of the Company until their successors are chosen shall be: James H. McDonald and Peter F. Burns. The Members agree that the managers designated herein shall not be removed by the Members and if a vacancy occurs, the successor Manager shall be appointed by the said law firms as provided above.

Article 4.2 sets for the rights and powers of the Managers:

4.2 Rights and Powers of Managers. The Managers shall have all rights and powers required or appropriate to manage the Company in its ordinary course of business and affairs; subject, however, in all events to the specific limitations set forth in this Operating Agreement, including the limitations set forth in Sections 4.3 and 4.4 hereof. The Managers are specifically authorized to enter an agreement for water and sewer infrastructure improvements to Company property.

Articles 4.3 and 4.4 set forth the restrictions on the Managers and specific provisions concerning the disposition of real property.

4.3. Restrictions. The Managers of the Company shall have no authority to (i) do any act in contravention of this Operating Agreement; (ii) do any act which would make it impossible to carry on the ordinary business and affairs of the Company; (iii) confess a judgment against the Company; (iv) possess the Company's property or **assign the Company's rights in specific property of the Company for other than the Company's purposes**; (v) carry on any business of the Company after an event of dissolution except that which is necessary or appropriate to wind up and liquidate its business and affairs; (vi) assign or distribute all, or substantially all, of the assets of the Company (other than in the ordinary course of the Company's business and affairs) which is to occur as part of a single transaction or plan unless the written consent required under Section 4.8 is obtained; or (vii) file a petition for bankruptcy for protection under federal law unless the written consent of all Members is obtained. (Emphasis added).

4.4 Disposition of Real Property. Anything contained in this Agreement to the contrary notwithstanding, **the lease, sale, conveyance, exchange, transfer, mortgage, hypothecation,**

> **encumbrance or pledging of the real property of the Company shall require the unanimous consent or agreement of all Members and all Managers of the Company.** (Emphasis added).

Article 4.4 requires the unanimous consent or agreement of all Members and Managers of the company to sell, lease or encumber the LLC's real estate.

Even though Article 4.6 gives persons the right to rely on the Managers' power and authority, no such provision gives persons the right to rely on a Member's authority. ALA. CODE §10A-5A-302 (2014) states, "No person shall have the power to bind the limited liability company, or a series thereof, except: (a) to the extent the person is authorized to act as the agent of the limited liability company or a series thereof under or pursuant to the limited liability company agreement."

Based on the above quoted Articles of the Operating Agreement and the provisions of ALA. CODE § 10A-5A-302, Marion Uter had no authority to bind CVSH to the Compensation Agreement.

In addition, under these facts the doctrine of apparent authority cannot confer upon Marion Uter the power or right to bind CVSH. Under Alabama law, " 'apparent authority' is such authority as a principal knowingly permits an agent to assume or holds him out as possessing." *American Standard Credit, Inc. v. National Cement Co.,* 643 F.2d 248, 267 (5th Cir. 1981). The doctrine of apparent authority is based upon the actions of the principal, not those of the agent. *Malmberg,* 644 So.2d at 891. Apparent authority is created when the principal holds the agent out to a third party as having the authority upon which the agent acts, not upon what one thinks an agent's authority might be or what the agent holds out his authority to be. *Id.* For apparent authority, "either the principal must intend to cause the third person to believe that the agent is authorized to

act for him, or he should realize that his conduct is likely to create such a belief. . . ." *Restatement (Second) of Agency* § 27 Comment (a) (1958); *Glass v. S. Wrecker Sales*, 990 F. Supp. 1344, 1353 (M.D. Ala.), *aff'd*, 163 F.3d 1361 (11th Cir. 1998).

Even if the evidence indicated Marion Uter represented to Ross Easter he had the authority to bind CVSH, which it does not so indicate, this would be insufficient to subject CVSH to the doctrine of apparent authority so that Marion Uter could bind the LLC. The doctrine of apparent authority is based upon the actions of the principal, not those of the agent. *Malmberg,* 644 So.2d at 891. Apparent authority is created when the principal holds the agent out to a third party as having the authority upon which the agent acts, not upon what one thinks an agent's authority might be or what the agent holds out his authority to be. *Glass v. S. Wrecker Sales*, 990 F. Supp. 1344, 1353 (M.D. Ala.), aff'd, 163 F.3d 1361 (11th Cir. 1998).

There is no evidence that either of the Managers ever had any communications with Ross Easter or Leah Mayersohn about engaging their services to assist CVSH. This Court has already held that Marion Uter's signature on the Compensation Agreement does not bind CVSH. Therefore, Portside does not have a contract with CVSH under either the Operating Agreement or the doctrine of apparent authority.

Count Two: Breach of Joint Venture or Partnership Agreement

Portside contends that it was either a de facto partner or de facto joint venturer with Marion Uter, Paul Uter, Cypress Village Development, CVSH and Canal Road Homes in the development of land at issue. Portside contends that it was part of a community of interest between itself and the other actors listed whose intent it was to actively participate in an association to carry out a single business venture of the

development of the said land for profits for which purpose they combined their efforts, money, skill and knowledge without creating a partnership or corporate entity. (Doc. 10 at 24).

The burden of establishing the existence of a joint venture is upon the party asserting that the relation exists. *Flowers v. Pope,* 937 So.2d 61, 67 (Ala. 2006). "[I]t is generally agreed that in order to constitute a joint venture, there must be a community of interest and a right to joint control." *Id. (citing Moore Merchants and Planters Bank*, 434 So.2d 751, 753 (Ala. 1983)). "The elements of a joint venture have been held to be: a contribution by the parties of money, property, effort, knowledge, skill, or other assets to a common undertaking; a joint property interest in the subject matter of the venture and a right to mutual control or management of the enterprise; expectation of profits; a right to participate in the profits; and usually, a limitation of the objective to a single undertaking or ad hoc enterprise. While every element is not necessarily present in every case, it is generally agreed that in order to constitute a joint venture, there must be a community of interest and a right to joint control." *Flowers,* 937 So.2d at 66.

Therefore, to determine whether the summary judgment is proper, it must be decided whether there was substantial evidence of a community of interest and joint control between CVSH and Portside. As for community of interest, Portside has not submitted any evidence to prove that CVSH and Portside participated in a community of interest regarding the marketing, development, financing or sale of the land at issue. On the contrary, CVSH has presented affidavits of Marion Uter and Paul Uter attesting that Ross Easter and Portside were never offered an ownership interest in the Cypress Village development and were paid as independent contractors for the marketing that Portside

performed for other projects involving the Uters. The affidavits further attest that neither Ross Easter nor Portside ever had any right to control the project or to make management decisions with regard to it. (Docs. 98-2 at 87, 90).

With no contradicting evidence presented by Portside, this Court finds that summary judgment is due to be and hereby is entered in favor of CVSH on Count Two of Portside's Counterclaim.

Count Three: Breach of Good Faith and Fair Dealing

Portside contends that CVSH had and breached its duty of good faith and fair dealing owed to Portside by failing to comply with the terms of the agreement between the parties by not disclosing who the true owner was on the Portside Pre-Sales, and by failing to honor the material portions of its agreement with Portside.

Section 7-1-304 of the Alabama Code states that "Every contract or duty within this title imposes an obligation of good faith in its performance and enforcement." However, the Official Comments to this section states:

> This section does not support an independent cause of action for failure to perform or enforce in good faith. Rather, this section means that a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract or makes unavailable, under the particular circumstances, a remedial right or power. This distinction makes it clear that the doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and **does not create a separate duty of fairness and reasonableness which can be independently breached**.

Official Comments to Ala. Code § 7-1-304 (emphasis added).

Interpreting this statute, the Northern District of Alabama stated,

> Under Alabama law, every contract imposes an obligation of good faith in its performance and enforcement. Ala. Code § 7–1–304 (originally enacted as Ala. Code § 7–1–203). *See also Tanner v.*

> *Church's Fried Chicken, Inc.*, 582 So. 2d 449, 451–52 (Ala. 1991).
> However, the violation of this obligation does not give rise to a
> cause of action as the statute was intended to be directive, not
> remedial. *Tanner*, 582 So. 2d at 452 (citing *Chandler v. Hunter*,
> 340 So. 2d 818, 821 (Ala. Civ. App. 1976)). *See also Government
> Street Lumber Co., Inc. v. AmSouth Bank, N.A.*, 553 So. 2d 68, 72
> (Ala. 1989) ("failure to act in good faith in the performance or
> enforcement of contracts arising out of Title 7A does not state a
> claim for relief that may be granted in Alabama, since § 7–1–203
> is directive rather than remedial"). Thus, in order to prove a
> breach of contract on the part of the defendant, a plaintiff must
> prove that the defendant expressly breached a specific term of the
> contract. *Tanner*, 582 So. 2d at 452.

*Wiggins v. FDIC*, 2017 WL 588444, at 2 (N.D. Ala. Feb. 14, 2017). Accordingly, with this Court having already found there is no enforceable contract, and there being no independent cause of action under Section 7-1-304 of the Alabama Code, Portside's claim of breach of good faith and fair dealing fails as a matter of law. Summary Judgment in CVSH's favor is due to be and hereby is granted.

Count Four: Unjust Enrichment

Portside contends that it reasonably believed a binding agreement had been reached between it and Marion and Paul Uter and their related entities allowing Portside to expend time and effort to market the Development, for the benefit of Cypress Village Development, Canal Road Homes and CVSH causing them to be unjustly enriched by Portside's efforts.

To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation. *Portofino Seaport Village, LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008); *see also American Family Care, Inc. v. Fox*, 642 So. 2d 486, 488 (Ala.Civ.App. 1994).

As indicated in the Affidavit of Marion Uter, Ross Easter was compensated as an independent contractor of Cypress Village Development Company and Portside was an active broker selling property in Cypress Village and being paid a commission for the sales. James H. McDonald, Paul Uter and Marion Uter all attest CVSH did not use Portside's business operations, financial pro forma information, internal business products, or marketing and promotion information for its lots in the development. As such, CVSH did not knowingly accept and retain a benefit from Portside, if Portside even conferred any benefit on CVSH at all. (*See* Doc. 98-2 at 87-95). Therefore, the only reasonable expectation of compensation Portside could have had was from the compensation it actually received as a selling broker and the payments it received as an independent contractor of Cypress Village Development Company. Because the Compensation Agreement does not bind CVSH or its property, Portside could not have had a reasonable expectation of compensation under the Compensation Agreement. As such, summary judgment is hereby entered in CVSH's favor on Count 4 of Portside's counterclaim.

Count Five: Fraud, Deceit, and Fraudulent Suppression

Portside contends that Marion Uter, Paul Uter, CVSH, and Cypress Village Development Company conspired in lulling Portside into not exercising its rights regarding the $473,500.00 allegedly earned by Portside so that the Baldwin County litigation could be settled. Portside contends that the Uters deceived and fraudulently suppressed material information from Portside while Portside expended time and labor marketing the Development for the benefit of CVSH.

To the extent that Portside alleges that the Uters deceived Portside by allowing

Portisde to reasonably rely on assurances, promises or representations from either of them that Portside would be paid the $473,500.00 allegedly owed to it, this cause of action fails as a matter of law because CVSH is the counter claim defendant and neither Marion or Paul Uter had the authority, express or apparent, to bind CVSH.

Count Six: Third Party Beneficiary

Portside contends that Canal Road Homes and CVSH had agreements with potential purchasers that Uter Homes would build residences for eventual sale. Portside allegedly created Pre-Sales regarding those homes, and, alleges it was the intended beneficiary of those Pre-Sales. (Doc. 10 at 27). The housing contracts were never completed and Portside contends that, as a third party beneficiary, it suffered losses based on those Pre-Sales that it created based on those incomplete housing contracts.

"[I]f one person makes a promise for the benefit of a third party, such beneficiary may maintain an action thereon, though the consideration does not move from the latter." *Locke v. Ozark City Bd. of Educ.*, 910 So. 2d 1247, 1250 (Ala. 2005)(*citing Franklin Fire Ins. Co. v. Howard,* 162 So. 683, 684 (1935). "To recover under a third-party beneficiary theory, the complainant must show: 1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract was breached." *Id.* (*citing H.R.H. Metals, Inc. v. Miller,* 833 So.2d 18, 24 (Ala.2002)(citations omitted). "Further, [i]t has long been the rule in Alabama that one who seeks recovery as a third-party beneficiary of a contract must establish that the contract was intended for his direct, as opposed to incidental, benefit." *Id.* (*citing Morris*

*Concrete, Inc. v. Warrick,* 868 So.2d 429, 434 (Ala.Civ.App.2003)(citations and quotation marks omitted). "[W]e look to the complaints and the surrounding circumstances of the parties to ascertain the existence of that direct benefit." *Id.* (*citing Holley v. St. Paul Fire & Marine Ins. Co.,* 396 So.2d 75, 80 (Ala.1981)(citations omitted).

Portside alleges that the contracts between the Canal Road Homes and CVSH and potential purchasers were intended to bestow a direct benefit on it by way of the Pre-Sales Portside created for the potential purchasers. Other than referring to his "notes," Mr. Easter has not presented the Court with any evidence that the contracts between CVSH and potential purchasers were intended to bestow a direct benefit on it. The affidavits submitted by Marion and Paul Uter directly contradict this assertion. (*See* Doc. 98-2 at 87-92). Construing this evidence in the light most favorable to Portside, this Court finds that no genuine issue of material fact exists regarding Portside's third party beneficiary claim and summary judgment is due to be granted in favor of CVSH on Count Six of the Counterclaim.

Count Seven: Quantum Meruit

Portside contends that CVSH was unjustly enriched by Portside's work and labor and equity and good conscience requires CVSH to make restitution to Portside for its work and labor. (Doc. 10 at 28).

Ordinarily, the law imposes liability to pay for services or benefits rendered by another only when the person for whom they were rendered expressly or impliedly requested them. *Carr v. Pearman*, 860 N.E. 2d 863 (Ind. Ct. App. 2007). Thus, as a general rule, where a person performs labor for another without the latter's request,

however beneficial such labor may be, there can be no recovery therefor. *Hermanowski on Behalf of Americable Associates v. Naraja Lakes condominium No. Five, Inc.*, 421 So. 2d 558 (Fla. Dist. Ct. App. 3d Dist. 1982).

Based on the Court's findings herein, that the Compensation Agreement does not bind CVSH, and lacking any other evidence that CVSH expressly or impliedly requested Portside's assistance, Portside's claim for quantum meruit fails. Summary judgment is due to be entered in favor of CVSH on this Count.

<u>Disallowance of Portside's Claim</u>

Plaintiff's Motion for Summary Judgment requests disallowance of Portside's claim based on Federal Rule of Bankruptcy Procedure 3001(c)(2)(D) on the grounds that Portside cannot or has not provided an itemized statement of any interest, fees, expenses or charges on which its claim is based. While this Court agrees that Portside's claim should be disallowed, it disagrees with the reasoning of Plaintiff's argument.

First, subsection (c)(2) applies to individual debtors, and CVSH is not an individual debtor. Second, on May 11, 2015, this Court entered an Order consolidating CVSH's Objection to Portside's claim with the present adversary proceeding.

Section 101(5) of the Bankruptcy Code defines a claim, in part, as a right to payment. 11 U.S.C. § 101(5). Having already determined herein that the Compensation Agreement does not bind CVSH or its property this Court therefore further determines that Portside has no right to payment under the Compensation Agreement. Although any one of the seven causes of action set forth in Portside's Counterclaim could have resulted in a valid claim against CVSH, this court has granted

18

Case 15-00029 Doc 102 Filed 07/07/17 Entered 07/07/17 15:21:22 Desc Main
Document Page 18 of 20

summary judgment in favor of CVSH and against Portside on all seven claims and thus Portside has no right to payment or right to an equitable remedy pursuant to its counterclaims. Therefore, with no conceivable right to payment or right to an equitable remedy under § 101(5), Portside is not a creditor of CVSH. Portside's claim is due to be and hereby is DISALLOWED in full with prejudice.

## CONCLUSION

In conclusion, and based on the reasons set out herein, this Court finds that CVSH is entitled to an award of summary judgment in its favor on all counts of its Amended Complaint. Further, CVSH is entitled to an award of summary judgment in its favor and against Portside on the seven causes of action set forth in Portside's Counterclaim because there are no genuine issues of material fact that are essential to Portside's ability to recover. Additionally, Portside's claim in the underlying bankruptcy proceeding is hereby DISALLOWED in full with prejudice.

Lastly, the Court must address the Counterclaim as it relates to all other named parties. As the Counterclaim relative to the remaining parties involves primarily state court issues, this Court must consider whether abstention is necessary and proper.

Despite its broad jurisdictional powers, Congress did not intend for bankruptcy courts to become a courts of general jurisdiction where any matter is heard as long as debtor is somehow involved. Section 305 of the Bankruptcy Code grants significant discretion to the bankruptcy courts to decline to exercise jurisdiction over a case filed under Title 11, even when jurisdiction is otherwise appropriate. *In re Efron*, 535 B.R. 505 (Bankr. D.P.R. 2014), *aff'd,* 529 B.R. 396 (B.A.P. 1st Cir. 2015). Though abstention is an extraordinary remedy, it is appropriate where the interests of all the parties are best

served by dismissal or suspension. 11 U.S.C. § 305(a)(1). Abstention may be raised on the Court's own motion, and a separate hearing is not required where the Court has already conducted a hearing which allowed for the garnering of facts necessary to support the decision to abstain. *See In re ELRS Loss Mitigation*, 224 B.R. 104, 107–08 (Bankr. E.D.Mo. 1998). The following factors are applied on a case by case basis to determine whether abstention is appropriate: (1) there is a pending state law proceeding, (2) another forum is better suited to decide the case, (3) the case is a two party dispute, and (4) whether resolution of the case involves interpretation of state law. *Efron* at 510-11.

Applying these factors to the present case, this Court concludes that another forum is better suited to decide the case due to the interpretation of state law as it relates to all other parties. Accordingly, this Court abstains from adjudicating the Counterclaim as it related to all other named parties. All other named parties are hereby DISMISSED without prejudice. The trial of this matter, which is presently set to begin on July 14, 2017, is hereby CANCELLED.

This matter having been fully adjudicated herein, the Clerk is DIRECTED to enter judgment in favor of CVSH and against Portside, and to dismiss without prejudice all other named defendants.

Dated: July 7, 2017

_____
JERRY OLDSHUE
U.S. BANKRUPTCY JUDGE